NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICROBILT CORPORATION,

Plaintiff,

v.

BAIL INTEGRITY SOLUTIONS, INC., et al.,

Defendants.

Civil Action No. 19-637 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Bail Integrity Solutions, Inc. ("Bail Integrity") and Thomas Brian Shirah's ("Shirah") (collectively, "Defendants") Motion to Dismiss MicroBilt Corporation's ("MicroBilt" or "Plaintiff") Complaint for lack of personal jurisdiction and failure to state a claim. (ECF No. 18.) Plaintiff opposed (ECF No. 19), and Defendants replied (ECF No. 20). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

**I.     Background[1]**

Plaintiff is a consumer reporting agency and reseller of consumer credit information. (Compl. ¶ 5, ECF No. 1.) In that capacity, Plaintiff maintains a database of consumer credit

---

[1] In ruling on a motion to dismiss, the Court accepts as true all well-pled factual allegations in the Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court may also consider exhibits to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citation omitted).

information, allowing its customers to purchase access to such information for their lending, leasing, collections, and risk management needs. (*Id.*) Within the last year, Plaintiff began offering a Mobile Device Verification service, which allows customers to confirm that a person, such as an applicant for financial services, owns a valid mobile phone number. (*Id.* ¶ 9.)

As a reseller of consumer credit information, Plaintiff is required to comply with various consumer data protection statutes and regulations, including the Fair Credit Reporting Act ("FCRA") and the Gramm-Leach Bliley Act ("GLBA"). (*Id.* ¶ 6.) Plaintiff alleges that, to ensure compliance with such requirements, it requires customers to be fully credentialed and approved as authorized end users of its services. (*Id.* ¶ 7.) The credentialing process includes: (1) completion of the User Agreement, the Application for Use of Consumer Reports, and the On-Site Business Inspection and Verification form; (2) an extensive background check on the business and its principals and/or owners; and (3) compliance review and management approval. (*Id.*) Plaintiff alleges it only provides services to those businesses that demonstrate a legitimate "permissible purpose" as defined under the FCRA or a legitimate "permitted use" as defined under the GLBA. (*Id.* ¶ 8.)

Plaintiff alleges that, on July 26, 2018, Bail Integrity, a registered bail bondsman service, entered into a User Agreement for its services. (*Id.* ¶¶ 14, 15; *see* User Agreement, Ex. A to Compl. 1–5, ECF No. 9-1.) The User Agreement contained Plaintiff's standard terms and conditions. (Compl. ¶ 15.) Plaintiff further alleges that, by entering the User Agreement, Bail Integrity certified: (1) "each specific 'permissible purpose' as defined in the FCRA or 'permitted use' under the GLBA for which the consumer credit or other Information is requested and . . . no other purpose or use"; (2) "all Information will be held in strict confidence"; and (3) "the Confidential Information disclosed to it by [Plaintiff] shall not be disclosed to any third party and

shall be used only for the purposes herein." (*Id.* ¶¶ 15–16.) The User Agreement has a forum-selection clause, which states that any action related to the User Agreement would be filed in New Jersey state or federal courts and that the parties waived any objection to personal jurisdiction. (*Id.* ¶¶ 2–4; User Agreement ¶ 28-o.)[2]

Plaintiff alleges that, on the same day Bail Integrity entered the User Agreement, Shirah signed an Addendum to use Plaintiff's Mobile Device Verification service. (Compl. ¶ 15; *see* Addendum, Ex. A to Compl. 6, ECF No. 9-1.) The Addendum specified that "consumer consent guidelines and language [are] required to be implemented in any use of the MicroBilt Mobile Device Verification products and services." (Compl. ¶ 17.) Plaintiff alleges that this provision required Bail Integrity to "provide a version of its hard copy consumer agreement and/or provide screenshots of its online consumer consent process with the required language included, prior to use of such MicroBilt products and services, and upon request thereafter for audit and compliance purposes." (*Id.*)

Shirah also completed an Application for Access to Consumer Reports and FCRA Related Data. (*Id.* ¶ 18; Appl., Ex. B to Compl., ECF No. 9-2.) Bail Integrity allegedly indicated on the Application that Plaintiff's services would be used for credit extension, account review, account collection, and bankruptcy filing, as allowed under the FCRA, as well as for fraud

---

[2] The forum-selection clause reads:

> <u>Choice of Law and Venue</u>: The parties irrevocably agree that: i) This Agreement shall be governed by and construed in accordance with the sole and exclusive law, personal jurisdiction and venue of the state and federal courts of the State of New Jersey . . . ; ii) Any action relating to this Agreement shall be filed in such courts; and iii) Any claim or defense that a party lacks minimum contacts with the forum or that such courts lack personal jurisdiction . . . is improper or inconvenient, shall be waived.

(User Agreement ¶ 28-o (The original text is in all capitals.).)

3

prevention, credit and collection activity, skip tracing, and asset verification search, as allowed under the GLBA. (*Id.* ¶¶ 18–19.) In a Letter of Intent, Bail Integrity allegedly indicated it would use Plaintiff's services to determine whether clients under bail or being considered for bail were using other persons' Social Security Numbers. (*Id.* ¶ 21; Letter, Ex. C to Compl., ECF No. 9-3.)

On January 8, 2019, *Motherboard* published an article with the following subheading: "T-Mobile, Sprint, and AT&T are selling access to their customers' location data, and that data is ending up in the hands of bounty hunters and others not authorized to possess it, letting them track most phones in the country." (*Id.* ¶ 22.) The article's author had paid $300 to a bounty hunter affiliated with Bail Integrity to geolocate a phone number, which the bounty hunter did with the owner of the phone's consent. (*Id.* ¶¶ 22, 25.) The article also reported that Plaintiff sold its geolocation services to various private industries with little oversight. (*Id.* ¶ 23.) Through the article, Plaintiff learned its Mobile Device Verification service was being resold to unlicensed end users on the black market. (*Id.* ¶ 25.)

Plaintiff filed the instant Complaint against Defendants alleging the following claims: Count One—Breach of Contract; Count Two—Breach of Duty of Good Faith and Fair Dealing; Count Three—Fraudulent Misrepresentation; and Count Four—Misappropriation of Trade Secrets in violation of Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.* Defendants move to dismiss the matter pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[3]

---

[3] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

4

## II. Legal Standard

### A. Rule 12(b)(2) Standard

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Id.* (citing N.J. Ct. R. 4:4-4(c)). The exercise of personal jurisdiction does not violate due process where "the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Once a defendant challenges the court's jurisdiction, "the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citation and internal quotation marks omitted). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). If a plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 417 U.S. at 477.

Unlike the subject-matter jurisdiction requirement, the personal jurisdiction requirement protects an individual liberty interest that may be waived. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 (1982); *see also Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) ("It is settled . . . that parties to a contract may agree in advance to submit to the [personal] jurisdiction of a given court."). Freely negotiated

contract terms, such as forum-selection clauses, are enforced "to give effect to the legitimate expectations of the parties." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972). A forum-selection clause is presumptively valid unless the party objecting to it can show that enforcement of the clause would be unreasonable under the circumstances, *id.* at 10, and may obviate the need for a court's personal jurisdiction analysis. *Harfouche v. Wehbe*, 950 F. Supp. 2d 766, 770 (D.N.J. 2013) (citation omitted).

Jurisdiction over an individual defendant does not exist simply because he is an agent of an organization which is presumably amenable to jurisdiction in a forum. *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)); *see also Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 552 (D.N.J. 2018) ("As a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity."). In that case, a separate analysis of the Court's jurisdiction over the individual defendant is necessary. *See Nicholas*, 224 F.3d at 184.

B. **Rule 12(b)(6) Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). For claims of fraud, however, Rule 9(b) imposes a heightened pleading standard. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999). A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged. To satisfy this standard, the plaintiff must plead

or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citation and quotation marks omitted). Furthermore, where a plaintiff sues multiple defendants for fraud, "[a] plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Naporano Iron*, 79 F. Supp. 2d at 511. Regardless of whether Rule 8(a)(2) or 9(b) applies, on a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Upon a 12(b)(6) motion, a district court conducts a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

III. **Discussion**

A. **Personal Jurisdiction Over Bail Integrity**

Plaintiff alleges that this Court has personal jurisdiction over Bail Integrity by virtue of the forum-selection clause contained in the parties' User Agreement. The User Agreement provides that any action relating to the agreement shall be filed in the state and federal courts of New Jersey and that any claim that such courts lack personal jurisdiction shall be waived.

Bail Integrity argues that the case law in the Third Circuit and elsewhere requires Plaintiff to submit facts and proofs to sustain its jurisdictional allegations upon Defendants' Rule 12(b)(2) motion. The Third Circuit has held, "[h]owever, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Here, having not held an evidentiary hearing, the Court may rely upon Plaintiff's Complaint and exhibits to the Complaint.

Bail Integrity also argues that the User Agreement is unenforceable because it is an unsigned, "form" contract that fails to mention Bail Integrity and because Plaintiff does not allege that Bail Integrity electronically accepted it. This argument is unavailing because forum-selection clauses in form agreements are nonetheless prima facie valid. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 593 (1991) (enforcing forum-selection clause in form passage contract). Moreover, Plaintiff plausibly alleges that, as part of its credentialing process, Bail Integrity was required to accept the User Agreement and that Bail Integrity would not

8

receive Plaintiff's services if it had not assented to the terms of the User Agreement.[4] The Court, accordingly, finds Plaintiff has made a prima facie case demonstrating the Court's jurisdiction over Bail Integrity.

### B. Personal Jurisdiction over Shirah

Shirah contends that the Court does not have personal jurisdiction over him because he did not sign the Agreement in his individual capacity and because he did not purposely avail himself of the privileges and benefits of New Jersey laws. "This argument fails because, where a third party's conduct is closely related to the contractual relationship, the forum[-]selection clause applies to the third party." *Foley & Lewis Racing, Inc. v. Burling*, No. 07-972, 2008 WL 544655, at *3 (D.N.J. Feb. 27, 2008) (internal citations omitted) (finding CEO, who signed a contract in his official capacity, had standing to enforce contract's forum-selection clause because he was closely related to the contractual relationship); *see also Infinity Staffing Sols., LLC v. Greenlee*, No. 18-12626, 2019 WL 1233554, at *6 (D.N.J. Mar. 18, 2019) (finding members of an LLC, who signed contract on behalf of the entity, waived their jurisdictional rights and gave implied consent to jurisdiction).

---

[4] Plaintiff further alleges that, for Bail Integrity to use the Mobile Device Verification service, it contemporaneously entered into the Addendum, which Shirah signed and referenced the User Agreement multiple times. For example, the Addendum states that "[it], *together with the Agreement*, constitutes the entire understanding between the Parties hereto with regard to the subject matter contained herein . . . ." (Addendum 1 (emphasis added).) "In order for there to be a proper and enforceable incorporation by reference of a separate document . . . the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms." *ADP, LLC v. Lynch*, No. 16-1053, 2016 WL 3574328, at *4–5 (D.N.J. June 30, 2016) (citation and internal quotation marks omitted) (denying motion to dismiss for a lack of personal jurisdiction where complaint alleges employee could not accept any stock grants until he acknowledged he reviewed grant documents, including the covenant that contained a forum-selection clause). Here, even if Shirah did not sign the User Agreement, he signed the Addendum contemporaneously. Plaintiff, accordingly, states a plausible claim that Bail Integrity assented to the forum-selection clause, which was referenced in the signed Addendum.

"In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). Here, the Court finds that Shirah, acting as the owner, operator, and CEO of Bail Integrity, was involved in the negotiations leading up to the contracts. On the same day that Bail Integrity accepted the User Agreement, Shirah signed the Addendum. Shirah separately completed and signed the Application and Letter that further constitute the parties' agreement. As the owner of Bail Integrity, Shirah derived a direct benefit from the contractual relationship between the parties. For these reasons, Shirah is "closely related" to the parties' contractual relationship in such a way that it would be foreseeable that he would be bound. The Court, accordingly, finds Shirah waived his jurisdictional right and is subject to the Court's jurisdiction.

### C. Count One—Breach of Contract Claim

Defendants move to dismiss the breach of contract claim against Shirah only, arguing that Shirah cannot be held liable for MicroBilt's contractual obligations. "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also* 17A Am. Jur. 2d Contracts § 412 (2004) ("Generally, the obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for breach."). Here, Plaintiff does not allege Shirah is a party to the contract. Moreover, Plaintiff alleges that Shirah signed the contract on behalf of Bail Integrity. The Court, accordingly, finds Plaintiff has not stated a breach of contract claim against Shirah and dismisses Count One as to Shirah.

D.  **Count Two—Breach of Duty of Good Faith and Fair Dealing Claims**

MicroBilt's bad faith allegations rest on the same facts underpinning its breach of contract claims—that, *inter alia*, Defendants misused its Mobile Device Verification Services by reselling its services, facilitated unauthorized and unlawful access to consumer information, and failed to give notice to MicroBilt of any unlawful use of the services.

Defendants first argue that Plaintiff has not sufficiently pleaded a bad motive or intention necessary to state a claim and that the claim is duplicative of the breach of contract claim. "[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citations and internal quotation marks omitted). Here, construing the complaint in the light most favorable to Plaintiff, the Court finds MicroBilt sufficiently alleges that Bail Integrity allowed end-users to misuse MicroBilt's geolocation services with the specific intent of reselling and profiting from those services, thereby negatively impacting MicroBilt's right to receive the fruits of the contract.

Defendants also contend that MicroBilt may not bring an independent breach of good faith and fair dealing claim based on the same underlying conduct as its breach of contract claim. "Where a party has breached a specific term of a contract, that party cannot be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 389 (D.N.J. 2015) (citation and internal quotation marks omitted). "But where a contract's existence or its specific terms are disputed, a court may allow breach of contract claims to proceed through discovery or trial alongside alternative causes of action." *Id.* (citation

11

omitted). Here, the Court finds the validity of the contracts are disputed. For example, when contesting the Court's jurisdiction, Defendants questioned the validity of the User Agreement. (*See, e.g.*, Defs.' Moving Br. 11 ("Instead the 'Addendum' and other documents which purport to bear a signature were all apparently hand signed.").) Because it is unclear at this stage whether Defendants agree that a valid contract exists between the parties, and construing the Complaint in the light most favorable to Plaintiff, the Court finds Defendants have not satisfied their burden of demonstrating that Plaintiff's breach of good faith and fair dealing claim against Bail Integrity should be dismissed.

Lastly, Defendants argue that, if there is no contract between MicroBilt and Shirah, Shirah could not have breached the duty of good faith and fair dealing. Indeed, nonparties to a contract cannot be held liable for a breach of a contractual duty of good faith and fair dealing. *FDIC Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (finding the New Jersey Supreme Court would not recognize a breach of a contractual duty of good faith and fair dealing claim against nonparties). Moreover, without a contract, there can be no breach of an implied covenant of good faith and fair dealing. *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. App. Div. 1990). Because Plaintiff fails to state a breach of contract claim against Shirah, it also fails to state a claim for the breach of good faith and fair dealing. The Court, accordingly, dismisses Count Two against Shirah.

### E. Count Three—Fraudulent Misrepresentation Claims

Defendants contend that MicroBilt's fraud claims fail to meet Rule 9(b)'s heightened pleading requirement. In the Complaint, MicroBilt alleges that Defendants affirmatively misrepresented and omitted details of how they planned to use MicroBilt's Consumer Data and Information, while knowing of and concealing their true intentions. For example, on the July 31,

2018 Letter, Shirah, on behalf of Bail Integrity, indicated that the data and information would be used "to determine that clients under bail or considered for bail are not using other persons [Social Security Numbers]." Bail Integrity, then, failed to notify MicroBilt of its unauthorized disclosures of Consumer Information. Based on the forgoing facts, MicroBilt pleads with sufficient particularity as to the "who, what, when, where, and how" of the alleged fraud, and the Court finds that the Complaint satisfies Rule 9(b)'s heightened pleading requirement.

Defendants also argue that MicroBilt's fraud claims are barred by the economic loss doctrine. "Generally, the economic loss doctrine prohibits [a] plaintiff[] from recovering in tort economic losses to which [it is] entitled only by contract. Whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (internal citations omitted). Here, MicroBilt alleges the fraud occurred at the time the parties entered into the User Agreement—conduct that is extrinsic to the contract between the parties. The Court, accordingly, finds Defendants did not satisfy their burden of showing no fraud claim has been presented.

### F. Count Four—Misappropriation of Trade Secrets

MicroBilt alleges Defendants misappropriated its trade secrets and violated "an express duty [delineated in the User Agreement and Non-Disclosure Agreement] . . . to maintain the secrecy of the Trade Secrets and to limit the use or disclosure of the Trade Secrets." (Compl. ¶ 53.) Defendants argue, *inter alia*, that MicroBilt's misappropriation claims are barred by the economic loss doctrine. Here, as pleaded, Plaintiff's misappropriation claim, which is based on the agreements between the parties, must fail. The Court, accordingly, grants Defendants' Motion as to Plaintiff's misappropriation claims.

13

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 18) is granted in part and denied in part. An order consistent with this Memorandum Opinion will be entered.

/S/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**