E

X

H

I

B

I

T

A

# Exhibit "A"

Gene M. Burd
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, D.C. 20006
(202) 677-4048
gene.burd@agg.com

Jeffrey S. Jacobovitz*
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, D.C. 20006
(202) 677-4056
jeffrey.jacobovitz@agg.com

*Attorneys for Plaintiff MicroBilt Corporation*

*\*pro hac vice* admission to be filed

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------------- x

MICROBILT CORPORATION

                    Plaintiff,             Civil Action No.

          - against -           **JURY TRIAL DEMANDED**

BAIL INTEGRITY SOLUTIONS, INC. and
THOMAS BRIAN SHIRAH in his individual
capacity; ABC COMPANIES (1-10), JOHN and
JANE DOES (1-10)

                    Defendants.

------------------------------------------------------------------- x

## COMPLAINT

      Plaintiff MicroBilt Corporation ("MicroBilt"), a Delaware corporation headquartered in

Princeton, New Jersey, with a principal place of business located at 1640 Airport Road, N.W.,

Suite 115, Kennesaw, Georgia 30144-7038, by its attorneys, Arnall Golden Gregory LLP, alleges

as follows for its complaint against defendants Bail Integrity Solutions, Inc. ("Bail Integrity"),

13079587v1

Case 3:19-cv-00637-HG Document 1 Filed 01/17/19 Page 2 of 16 PageID: 2

upon information and belief a North Carolina corporation with a principal place of business located

at 221 Camelot Drive, Morganton, North Carolina 28655, and its CEO and owner, Thomas Brian

Shirah. (the "Defendants").

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court because of the diversity of citizenship of the

parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs,

under 28 U.S.C. § 1332. Plaintiff also has jurisdiction pursuant to 28 U.S.C. Sec. 1331 because

this action arises under the laws of the United States.

2.      MicroBilt files its breach of contract claim in this Court pursuant to section 28o of

the MicroBilt User Agreement (titled "Choice of Law and Venue"), which is incorporated by

reference into the individual agreements between MicroBilt and each Defendant, and which states:

> THE PARTIES IRREVOCABLY AGREE THAT: I) THIS AGREEMENT
> SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH
> THE SOLE AND EXCLUSIVE LAW, PERSONAL JURISDICTION AND
> VENUE OF THE STATE AND FEDERAL COURTS OF THE STATE OF NEW
> JERSEY, COUNTY OF MERCER, WITHOUT REGARD TO ITS CONFLICTS
> OF LAW PRINCIPLES; II) ANY ACTION RELATING TO THIS AGREEMENT
> SHALL BE FILED IN SUCH COURTS; AND III) ANY CLAIM OR DEFENSE
> THAT A PARTY LACKS MINIMUM CONTACTS WITH THE FORUM OR
> THAT SUCH COURTS LACK PERSONAL JURISDICTION OR THAT VENUE
> IS IMPROPER OR INCONVENIENT, SHALL BE WAIVED.

3.      Under 28 U.S.C. § 1404(a), the language of section 28o of the MicroBilt User

Agreement controls. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S.

49, 59–60 (2013) (finding that § 1404(a) "provides a mechanism for enforcement of forum-

selection clauses that point to a particular federal district" and holding that "a proper application

of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most

exceptional cases") (internal citations and quotations marks omitted)).  Therefore, and pursuant to

Case 3:19-cv-00637   Document 1   Filed 01/17/19   Page 3 of 10 PageID: 3

28 U.S.C. § 1391(b), venue is proper in this Court, and this Court has personal jurisdiction over each Defendant.

4.      This Court also has personal jurisdiction over Defendant Shirah pursuant to New Jersey's long-arm statute, N.J.R. 4:4-4, which provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment. *See Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 746 (D.N.J. 1999). Defendant Shirah has purposefully availed himself of the State of New Jersey by (1) entering into the above-described transaction with MicroBilt, which Defendant Shirah knew to be headquartered in New Jersey; (2) signing (in his capacity as CEO and owner of Bail Integrity) the User Agreement expressly selecting New Jersey as the parties' choice of law and venue; and (3) maintaining minimum contacts with New Jersey during the course of his business exchanges with MicroBilt. Such minimum contacts included, but are not limited to, email exchanges with MicroBilt personnel, all of which run through a server located at MicroBilt's headquarters in New Jersey. *See Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) ("When a defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.").

## FACTS

### Background

5.      MicroBilt is a "consumer reporting agency" and "reseller" of consumer credit information, as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a. In that capacity, MicroBilt maintains a sophisticated database of consumer credit information, allowing its credentialed business customers to purchase access to such information for their lending, leasing, collections and risk management needs.

13079587v1

6.      As a seller and reseller of consumer credit and other highly protected information, MicroBilt is required to comply with various statutes and regulations aimed at ensuring the protection of consumer data.  These include the FCRA, the Gramm-Leach Bliley Act ("GLBA"), the Drivers Privacy Act, and regulations promulgated by the Federal Trade Commission and Consumer Financial Protection Bureau.

7.      To ensure compliance with such requirements, MicroBilt implements numerous policies and procedures designed to safeguard consumer data from unauthorized use or resale.  One such measure requires that all MicroBilt customers and their principals be fully credentialed and approved as authorized end users of MicroBilt's services.  The credentialing process includes, but is not limited to, the customer's completion of MicroBilt's User Agreement, its Application for Use of Consumer Reports, its On-Site Business Inspection and Verification, and an extensive background check on the business and its principals and/or owners, as well as compliance review and management approval.

8.      MicroBilt provides its services only to those businesses that demonstrate a legitimate "permissible purpose," as defined under the FCRA, and/or a legitimate "permitted use," as defined under the GLBA.  MicroBilt's User Agreement specifies that all end users will be subject to monitoring and random audits to ensure the legitimacy of the end user's use of MicroBilt's services, and that the misuse of MicroBilt's services shall be cause for immediate termination of the agreement.

### MicroBilt's Mobile Device Verification Service

9.      Within the last year, MicroBilt began offering a new service, Mobile Device Verification, which assists MicroBilt customers in confirming that the mobile phone number submitted, *e.g.*, on a financial services application, is valid and owned by the applicant.

13079587v1

Case 3:19-cv-00637-LHG Document 1 Filed 01/17/19 Page 5 of 16 PageID: 5

10.     As stated on MicroBilt's website, the Mobile Device Verification service "is only offered to credentialed businesses with an approved business use. Consumer consent is also required before attempting to verify any mobile device information."

11.     MicroBilt's Mobile Device Verification service works as follows: Once the customer receives consent to verify an applicant's mobile phone information, Mobile Device Verification will confirm that the name, address, and mobile number submitted by the applicant matches the information on file with the wireless carrier corresponding to the mobile phone number.

12.     A customer can also use Mobile Device Verification to determine the proximity of the address provided in an application to the actual location of the applicant's mobile phone. As MicroBilt notes on its website, "[f]inding out the application address is hundreds of miles away from the phone submitted offers valuable insight into potential fraud against both the business and consumer that may have had their identity stolen."

13.     MicroBilt's geolocation service provides important benefits: ID verification; ID theft prevention and mitigation; other types of fraud prevention; emergency services. MicroBilt requires and relies on its business customers to follow the law and comply with contract safeguards and restrictions. The company exercises proper due diligence to ensure that this occurs and that customers use the information only for permissible purposes, in compliance with both the FCRA and GLBA.

### Bail Integrity Enters into User Agreement for MicroBilt Services

14.     Defendant Bail Integrity operates as a registered bail bondsman service.[1]

---

[1] Bail bondsman assist criminal defendants who cannot otherwise afford the bail set by the judge, posting the necessary bond on the defendant's behalf. However, "hiring a commercial bondsman removes the incentive for the defendant to appear at trial" because "[t]he defendant's failure to appear [in court] results in the bondsman, not the defendant, forfeiting bail." *See* Jonathan

15.     On July 26, 2018, Bail Integrity entered into a User Agreement with MicroBilt (See Exhibit A).[2]  In addition to MicroBilt's standard terms and conditions, the parties added an addendum to the User Agreement to allow for Bail Integrity's purchase of MicroBilt's newly-offered Mobile Device Verification service.

16.     By entering into the MicroBilt User Agreement, Bail Integrity expressly certified that, *inter alia*, (1) "each specific 'permissible purpose' as defined in the FCRA or 'permitted use' under the GLBA for which the consumer credit or other Information is requested and certify that such will be used for no other purpose or use;" (2) "all Information will be held in strict confidence;" and (3) "the Confidential Information disclosed to it by [MicroBilt] shall not be disclosed to any third party and shall be used only for the purposes herein."

17.     The addendum to Bail Integrity's User Agreement further specified that certain "consumer consent guidelines and language [are] required to be implemented in any use of the MicroBilt Mobile Device Verification products and services."  That provision required Bail Integrity to "provide a version of its hard copy consumer agreement and/or provide screenshots of its online consumer consent process with the required language included, prior to use of such MicroBilt products and services, and upon request thereafter for audit and compliance purposes."

18.     As part of the credentialing process, Bail Integrity completed a MicroBilt "Application for Access to Consumer Reports and FCRA Related Data" (the "Access

---

Drimmer, *When Man Hunts Man: The Rights and Duties of Bounty Hunters in the American Criminal Justice System*, 33 Hous. L. Rev. 731, 743 (1996).  This lack of incentive causes many criminal defendants to "skip bail" (i.e., fail to return to court), requiring the bondsman to locate the defendant and bring him to court.  *See id.*  Generally, in such instances, a bondsman will hire a professional bounty hunter to track down the defendant.  *Id.*

[2] All Exhibits will be filed under seal due to their confidential nature.

Case 3:19-cv-00637-HG   Document 1   Filed 01/17/19   Page 7 of 16 PageID: 7

Application"). The Access Application required Bail Integrity to, *inter alia*, indicate its intended use of MicroBilt's services for purposes of both the FCRA and GLBA.

19.     On its Access Application, Bail Integrity indicated that for purposes for the FCRA, its intended use of MicroBilt's services "[r]elated to [a] transaction involving credit extension, account review, account collection or bankruptcy filing with respect to subject consumer." Likewise, Bail Integrity indicated on its Access Application that for purposes of the GLBA, its intended use related to "Fraud Prevention," "Credit/Collection Activity/skip tracing," and "Asset Verification Search."

20.     Further, the addendum to Bail Integrity's User Agreement specified that its intended use of the MicroBilt Mobile Device Verification products and services was "Identity Verification."

21.     As part of its application, Bail Integrity also submitted a "Letter of Intent" using MicroBilt's template form. The form asked Bail Integrity to "explain in detail how the Consumer Data and/or other Information is going to be used (e.g., to evaluate the credit of customers interested in financing furniture purchases, etc.)." In responding to this inquiry, Bail Integrity wrote that such information would be "[u]sed to determine that clients under bail or considered for bail are not using other persons SSN [Social Security Number]. We try our best to prevent fraud to persons under bail and being considered for bail." The Letter of Intent was dated July 31, 2018 and signed by Bail Integrity's owner and CEO, Defendant Shirah.

### Bail Integrity Breaches User Agreement

22.     On December 13, 2018, a staff writer for *Motherboard*—the online arm of the Canadian print magazine *Vice*—approached a "bounty hunter" affiliated with Bail Integrity to have the bounty hunter "geolocate" a phone number provided by the reporter (with the owner of the phone number's consent). Joseph Cox, "I Gave a Bounty Hunter $300. Then He Located Our

Case 3:19-cv-00637-LHG Document 1 Filed 01/17/19 Page 8 of 16 PageID: 8

Phone." MOTHERBOARD (Jan. 8, 2019), https://motherboard.vice.com/en_us/article/nepxbz/i-gave-a-bounty-hunter-300-dollars-located-phone-microbilt-zumigo-tmobile. The reporter then described the transaction in an article published online on January 8, 2019, using the following subheading: "T-Mobile, Sprint, and AT&T are selling access to their customers' location data, and that data is ending up in the hands of bounty hunters and others not authorized to possess it, letting them track most phones in the country." *Id.*

23. The article also contained highly negative and overtly misrepresentative language about MicroBilt. *Id.* (noting that "Micro[B]ilt, is selling phone geolocation services with little oversight to a spread of different private industries, ranging from car salesmen and property managers to bail bondsmen and bounty hunters," calling such practices "highly questionable," and referring to the use of geolocation services as a "spying capability").

24. The *Motherboard* story was eventually picked up by numerous outlets. *See*, *e.g.*, MSNBC.COM, "Major cell phone companies are selling customers' locations," (Jan. 9, 2019), https://www.msnbc.com/velshi-ruhle/watch/major-cell-phone-companies-are-selling-customers-locations-1422805059934.

25. Notably, despite its mischaracterizations, the *Motherboard* article alerted MicroBilt to a fact of which it was previously unaware. Specifically, *Motherboard* alleged that MicroBilt's geolocation capability (*i.e.*, its Mobile Device Verification service) "is also being resold to others on the black market who are not licensed by the company [MicroBilt] to use it, *including me*, seemingly without Micro[B]ilt's knowledge." *Cox*, *supra* ¶ 20 (emphasis added). According to the article, the reporter paid the "bounty hunter" $300 to geolocate the mobile phone using the number provided. *Id.* MicroBilt was clearly the victim of this activity.

13079587v1

## DAMAGES

26.    As a result of the above, MicroBilt is a victim of a breach of contract, fraud and a trade secret misappropriation.  The above breach of confidentiality has led to governmental investigations, damage to MicroBilt's relationships with its vendors and customers, and significant harm to the company's reputation.

## PARTIES

27.    Defendant Bail Integrity Solutions, Inc. entered into a contract with MicroBilt on July 26, 2018.

28.    Defendant Thomas Brian Shirah is an Owner of Bail Integrity Solutions and has profited and benefitted from the above actions. Mr. Shirah signed the contract at issue on behalf of Bail Integrity Solutions.

29.    Defendants ABC Companies (1-10) are companies that have participated in the above actions and have not been named to the lawsuit.

30.    Defendants John and Jane DOES (1-10) are individuals that have participated in the above actions and have not been named to the lawsuit.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (All Defendants)

31.    MicroBilt repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth more fully herein.

32.    Defendants' blatant misuse of MicroBilt's Mobile Device Verification service violates the express terms of the User Agreement, including the addendum incorporated by reference into the User Agreement, in the following ways:

      a.    Defendants certified in the User Agreement that Bail Integrity would "use Consumer Information solely for purposes of carrying out its obligations under this Agreement and for no other purposes."   Instead, Bail Integrity

resold MicroBilt's Mobile Device Verification service's capabilities (*i.e.*, the geolocation of a consumer's mobile phone, which falls within the definition of "Consumer Information") for the sole purpose of exploiting MicroBilt's services and securing a hefty profit.

b.  Defendants certified in the User Agreement that Bail Integrity would, in compliance with the "Safeguards Rule" under the GLBA, "it shall implement appropriate technical and organizational procedures and controls to safeguard and protect Consumer Information against . . . unauthorized or unlawful access [or] disclosure. . . ." Rather than safeguard the Consumer Information in its possession against unauthorized or unlawful access, Defendants facilitated unauthorized and unlawful access to Consumer Information by reselling information pertaining to the geolocation of consumers' mobile phones.

c.  Defendants certified in the User Agreement that unless some legal restriction prevented it from doing so, Bail Integrity would orally provide notice to MicroBilt within one business day, and written notice within five business days, of any unauthorized access to or unlawful disclosure of Consumer Information. Upon information and belief, Defendants allowed for unauthorized and unlawful access to Consumer Information by reselling information pertaining to the geolocation of consumers' mobile phones at least as early as December 2018 without ever providing oral or written notice to MicroBilt.

d.  Defendants certified in the User Agreement that "all Information will be held in strict confidence;" and that "the Confidential Information disclosed to it by [MicroBilt] shall not be disclosed to any third party and shall be used only for the purposes herein," where "Confidential Information" is defined as "all information furnished in any manner by one part to the other under this Agreement and all information derived therefrom, including . . . products, services and pricing. . . ." The geolocation of a consumer's mobile device constitutes "Confidential Information," and Defendants' resale of such information to third parties was not one of the uses outlined in the User Agreement.

e.  In signing the addendum to the User Agreement, Defendants certified that the Mobile Device Verification services would be used for "Identity Verification" and acknowledged that "consumer consent guidelines and language [are] required to be implemented in any use of the MicroBilt Mobile Device Verification products and services," and Defendants were therefore required to obtain consumer consent prior to using the consumer's information to geolocate the consumer's mobile phone. Defendants resold such geolocation information without obtaining consumer consent.

13079587v1

33.     By reason of the foregoing, Defendants are in breach of contract for failing to comply with the contract's express terms.

34.     MicroBilt properly terminated its User Agreement with Bail Integrity for cause upon learning on Bail Integrity's breach.

35.     MicroBilt has been damaged by the foregoing in an amount to be determined at trial, in excess of $75,000 exclusive of interests and costs.

## SECOND CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing)
### (All Defendants)

36.     MicroBilt repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth more fully herein.

37.     Defendants' conduct has been in bad faith and in derogation of the implied covenant of good faith and fair dealing implied in every contract.

38.     MicroBilt has been damaged by the foregoing in an amount to be determined at trial, in excess of $75,000 exclusive of interests and costs.

## THIRD CAUSE OF ACTION
### (Fraudulent Misrepresentation)
### (All Defendants)

39.     MicroBilt repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth more fully herein.

40.     Defendants completed the credentialing process (including the Access Application and the Letter of Intent), and entered into the User Agreement and addendum, with the intention of using MicroBilt's Mobile Device Verification services for purposes other than those specified in the User Agreement and addendum, or those expressly articulated by the Defendants in completing the Access Application and Letter of Intent.

41.     Defendants fraudulently concealed from and/or intentionally failed to disclose to MicroBilt the true nature of its intentions with regard to Defendants' use of MicroBilt's Mobile Device Verification services.

42.     Defendants had exclusive knowledge of their intention to use the Mobile Device Verification services for purposes other than those specified in the User Agreement and addendum or expressly articulated by the Defendants in the Access Application or Letter of Intent.

43.     Defendants had the capacity to, and did, deceive MicroBilt with regard to their purported intentions for use of MicroBilt's Mobile Device Verification services, and undertook active and ongoing steps to conceal such intentions by their affirmative statements in the addendum, Access Application and Letter of Intent, and by their failure to notify MicroBilt, either orally or in writing, of its intentional unauthorized disclosures of Consumer Information.

44.     Defendants' concealment of its true intentions for the use of MicroBilt's Mobile Device Verification services at the time the parties entered into the User Agreement was material in that a reasonable person would have considered it important in deciding whether or not to enter into such an agreement.

45.     Defendants had a duty to disclose their true intentions for the use of MicroBilt's Mobile Device Verification services at the time the parties entered into the User Agreement by virtue of the fact that their failure to do so, and their affirmative statements to the contrary, constitute material misstatements.

46.     MicroBilt justifiably relied on Defendants' affirmative statements regarding their intended use of MicroBilt's Mobile Device Verification System in that MicroBilt required Defendants to certify to those representations regarding use and conducted an on-site inspection of Defendants' business.

13079587v1

47.     As a direct and proximate cause of Defendants' misconduct, MicroBilt has

suffered actual damages in an amount to be determined at trial, in excess of $75,000 exclusive of

interests and costs.

## FOURTH CAUSE OF ACTION
### (<u>Misappropriation of Trade Secrets in Violation of 18 U.S.C. § 1836</u>)
### (All Defendants)

48.     MicroBilt repeats and re-alleges the allegations contained in the preceding

paragraphs as if set forth more fully herein.

49.     MicroBilt markets and sells its Mobile Device Verification services across the

United States.

50.     The Mobile Device Verification service is a product used in interstate commerce.

51.     Microbilt is the sole owner of the Trade Secrets that comprise the method, process,

procedure, and technique underlying the geolocation capabilities of its Mobile Device Verification

service.

52.     MicroBilt took reasonable steps to maintain the secrecy of its Trade Secrets,

including:

> a.  Requiring all MicroBilt employees to sign confidentiality agreements
>     pertaining to any proprietary information learned during the course of their
>     employment, including any aspects of the Mobile Device Verification
>     technology;
>
> b.  Instructing security officers in its building to prevent unauthorized
>     employees from entering rooms where MicroBilt stores the code underlying
>     its Mobile Device Verification technology;

Case 3:19-cv-00637   Document 1   Filed 01/17/19   Page 14 of 15 PageID: 14

    c.   Implementing confidentiality clauses in all User Agreements, as described above, and entering into Non-Disclosure Agreements ("NDA"), with all customers;

    d.   "Carving up" the Mobile Device Verification software into modules in order to ensure that no one MicroBilt developer knows the entire product code; and

    e.   Restricting access to proprietary information relating to processing logic, workflows, and other supporting technology used to deliver the Mobile Device Verification service by only providing such access to MicroBilt senior management and key personnel whose job function requires an understanding of such proprietary information.

53.    On or about July 26, 2018, MicroBilt and Bail Integrity entered into a MicroBilt User Agreement and NDA. Defendant Shirah, in his capacity as owner and CEO of Bail Integrity, signed both agreements. Such agreements established an express duty on the part of Defendants to maintain the secrecy of the Trade Secrets and to limit the use or disclosure of the Trade Secrets.

54.    Defendants knew that MicroBilt considered the method, process, procedure, and technique for geolocating mobile phones to be trade secrets.

55.    Without MicroBilt's express or implied consent, Defendants improperly used and resold the Mobile Device Verification service for their own profit.

56.    Defendants knew that their misuse of MicroBilt's Trade Secrets for their own personal gain was in contravention of their duty to maintain secrecy.

57.    Defendants misappropriated MicroBilt's Trade Secrets by their acquisition, use, and resale of the Trade Secrets through improper means.

13079587v1

58.     Defendants' improper means included: (1) misrepresenting to MicroBilt that they would protect the Trade Secrets pursuant to the NDA when they never intended to abide by the NDA, and (2) breaching an express duty to maintain the secrecy of the Trade Secrets.

59.     Defendants' conduct in this manner was both willful and malicious.

60.     As a direct result of Defendants' misappropriation of MicroBilt's Trade Secrets, MicroBilt has suffered and continues to suffer damages in an amount to be proven at trial.

## JURY TRIAL DEMAND

61.     Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in its favor granting the following relief:

1.     Compensatory damages for Defendants' breach of contract to the fullest extent permitted by law;

2.     Compensatory damages for actual loss caused by Defendants' misappropriation of Plaintiff's Trade Secrets to the extent not addressed in computing damages for Defendants' breach of contract, and to the fullest extent permitted by law;

3.     Damages for Defendants' unjust enrichment caused by the misappropriation of Plaintiff's Trade Secrets to the extent not addressed in computing damages for actual loss, and to the fullest extent permitted by law;

4.     Reasonable royalties for Defendants' unauthorized use and resale of Plaintiff's Trade Secrets, to the extent not addressed in computing damages for actual loss, and to the fullest extent permitted by law;

Case 3:19-cv-00637  Document 1  Filed 01/17/19  Page 16 of 15 PageID: 16

5.      Exemplary damages for Defendants' willful and malicious misappropriation of Plaintiff's Trade Secrets in an amount equal to two times the amount of the compensatory damages awarded for Defendants' misappropriation;

6.      Compensatory damages for Defendants' fraudulent misrepresentation to the extent not addressed in computing damages for Defendants' breach of contract or misappropriation of Trade Secrets, and to the fullest extent permitted by law;

7.      Punitive damages for Defendants' fraudulent misrepresentation to the fullest extent permitted by law;

8.      Plaintiff's reasonable attorneys' fees and costs;

9.      Pre-judgment and post-judgment interest;

10.     Such other relief as this Court deems just and proper

Dated: January 17, 2019

Respectfully submitted,

/s/ Gene M. Burd
Gene M. Burd
Arnall Golden Gregory LLP
1775 Pennsylvania Avenue, NW
Suite 1000
Washington, DC 20006
(202) 677-4048
Facsimile: (202) 677-4049
gene.burd@agg.com

***Counsel for the Plaintiff MicroBilt Corporation***

13079587v1